The bill states that on the 14th December, 1795, an entry was made in the name of Samuel Barton for 640 acres on Sugg's Creek. as per Exhibit A. Afterwards a judgment was recovered against Barton in the name of John Boyd, and execution thereon was levied on the land covered by said entry, and on the 12th of May, 1800, was sold to the plaintiff as appears by record. In the mean time, — to-wit, on the 15th of March, 1797, — the said Barton, who was in declining circumstance, with a view of cheating and defrauding his creditors, made another entry on the same land, in the name of his infant daughter, Margaret Barton, Exhibit C. That after the entry in the name of Margaret Barton, on warrant 3654, he appropriated the same to other entries; and shortly after purchased warrant 3952, with a view of applying the same to the first entry made as aforesaid. But finding said entry sold as before set forth, he caused a survey to be made in the name of Margaret Barton for the same land included in the first entry, and applied warrant No. 3952 thereto. That Margaret Barton never paid any consideration for it; but the above transfer, which was not till the 9th of August, 1808 took place on the part of said Barton *Page 131 
to defraud the plaintiff, and to defeat his purchase; that he is the equitable owner, and Margaret, in the most favorable light, a volunteer. She was an infant at the time of the entry, afterwards married Thomas Bradley, and died in 1801, leaving one child named lane Bradley. That the grant did not issue till 1811, and then in the name of Margaret Barton. That Thomas and Jane brought ejectment to recover possession, which is depending. Possession has been held by the complainant under the sheriff's sale for the last twelve years. That the grant to Margaret passed no estate; but if it did, prays the title may be decreed to the complainant and a perpetual injunction.
The answer admits a grant issued to Margaret Barton at the time stated in the bill. That said Margaret died, and a recovery has been effected in the name of the respondent, and of his infant daughter, Jane Bradley, as the legal representatives of Margaret.
That Exhibit C is a true copy of the entry on which a grant issued to Margaret; said entry was made in her name, and for her use and benefit, and without any right or title, as he believes, ever being in Samuel Barton to the entry or warrant. Denies the entry was made to defeat the claim of the plaintiff under his purchase aforesaid. Any claim of the plaintiff was long subsequent to said entry; and denies said warrant was assigned to Margaret, and said entry made, to defraud the creditor of Samuel Barton; as, at the date of said entry, Samuel Barton was possessed of much property, and fully able to pay his debts, as he believes. The respondent says that the entry in the name of Samuel Barton, Exhibit A, founded on warrant 3654, was absolutely void at the time the Same was made, and vested no right in said enterer. The said warrant, by virtue of which the said entry purports to be made, had been granted before at another place for other land. The said entry did not authorize any survey or grant to said Samuel Barton, *Page 132 
and the complainant could acquire no interest therein under said sale. When the entry was made, under which the defendant claims, it was such an entry as vested a title in Margaret Barton, and was not subject to the legal or equitable title of Samuel Barton, and the entry of said Samuel Barton was made without any intention of holding the said land by virtue of the claim, but only to prevent some other person from entering the same land until Margaret Barton should procure a warrant to make the said entry. He does not know whether Samuel Barton paid for warrant 3952, or who paid for the same. That said warrant, when said entry was made, legally and equitably belonged to her, and is vested in her representatives, and is not subject to be sold for the debts of Samuel Barton. He also pleads the act of three years, and 1715, c. 48, sec. 9. Exhibit A. Samuel Barton assignee of Stephen Jones, c., beginning at Ozwell Townsend's preemption warrant, 3654. December the 14th, 1795. Exhibit C, Margaret Barton, of Arthur M'Rory, 640, 15th of March, 1797, adjoining Ozwell Townsend's line surveyed by William Nash, and further it is written, survey returned by John Duke, D. S., 1st of May. 1810. Samuel Barton for Margaret Barton. Copy of a grant to S. Barton, assignee of Stephen Jones, 640 acres, in Sumner county, on the east side of Cedar Creek, to S. Barton, 20th of December, 1711. warrant 3694. Record of the suit Bold v. Barton, the second Monday of May, 1799, in court judgment acknowledged for $640. Execution the first Monday of May, 1799, issued 13th of June, 1799. February 1, 1800, levied on all the right, title, and interest that Samuel Barton has to 610, adjoining of Ozwell Townsend's preemption and sold to Joseph Hamilton for $37, the 12th of May, 1800. An assignment of M'Rory's warrant No. 3952 to Samuel Barton, December 13, 1796, by Samuel Barton to Margaret Barton, 19th of March, 1797. *Page 133 
Sugden. 428. A trustee considered himself entitled to the trust money; no presumption can be received in opposition to the fact that he intended the lands bought to be subject to the trust. A purchase in the name of a child, either solely or jointly in the name of a parent, is not within the 27th of Elizabeth; therefore a sub purchaserbona fide not relieved. Sugden, 424, 425. But a purchase in the name of a child may be fraudulent against creditors, if at the time the parent was indebted to the extent of insolvency. Sugden, 425. See 5 Ves. Jr. 384; 2 Vernon, 683. It seems the better opinion, that a purchase is not within the operation of 13th Elizabeth when the same is clear of actual fraud. Sugden, 426; 2 Vernon, 490; 8 Ves. Jr., 199.
From the testimony of John Buchanan, it appeared that Samuel Barton had been a long time ago insolvent, but can not say when he became so; that Barton contracted the debt he owed to him in 1794 or 1795; that when he sued Barton the latter was able to pay, but refused, alleging that Shaw, the other obligor, ought to pay it, for he had received the consideration. Does not recollect when this suit was instituted, but believes his judgment was in 1799. The record is burned. That Barton, when he failed, did so suddenly. That he had property enough to pay all his debts, but was broken up by executions, selling it at an undervalue. That his judgment is not yet all satisfied. Judge Overton says that the bond Barton and Shaw gave to Buchanan first involved him; he wished not to pay it, and after he was sued for it, he began to convey away his land, but when that was he does not know. John Boyd says that when Barton gave his bond to him, which was on the 1st of May, 1797, he thought well of him; rather thinks he was then able to pay his debts, but not certain. However, he was not afraid of him then. *Page 134 
Suppose the case in the strongest point of view, for the complainant, that Barton assigned the warrant in fraud to defeat his creditors, and that he was indebted at the time of the assignment. The most that can be said is that the assignment did not pass the interest of the warrant to Margaret; that the act of assignment being void is the same as if it did not exist. Margaret, the infant, then, has the warrant of her father; without right in her possession, she enters it, and thereby makes an appropriation. For in this part of the transaction I think there is no difference whether Margaret made the appropriation herself, or it was done by her father or any other person for her; qui facit per alium facit per se. The warrant before entry, in consequence of the power it gives to make the entry, has never been considered as land or real estate, but personal, and passes as a chattel by contract and delivery, which is usually evidenced by assignment either, on the warrant itself, or on another paper, or by parol. Trover, I understand, for the conversion of a warrant has been supported in our court; this is taking it as a chattel, the recovery vesting the property in the defendant. A warrant, then, by this case is capable of being converted by one man to his own use against the will of another who was the owner before conversion. And although a court of equity might consider this appropriation a trust, in order to give the party injured a remedy adequate to his case, founded on the misconduct of the other party in making the conversion of the warrant; yet that can not be taken into consideration upon the present pleadings between these parties. This warrant, if it was converted by Margaret, the act constituting the conversion is not equivocal; it amounts to a consumption of the thing itself, to the extinguishment of it as a personalty. As a warrant, upon being located by entry, is functus officio as a warrant, and loses its existence in another existence which it has produced; to *Page 135 
wit, the entry. At this stage of the business, that is after entry, how stood the rights of the different parties? Suppose the plaintiff, after this entry was made had been a judgment creditor in 1797. and execution had issued against Samuel Barton, could it have been levied on the warrant in the entry office then? (for I will consider presently the case of the execution being levied on the entry); certainly not, for the reasons above stated. If it ever could have been levied, that is in the hands of Samuel Barton himself, which I think is very questionable, and rather that it can not; for if deeds, writing, and even bank-notes, can not be seized upon by a fi. fa., much less can a warrant in my opinion; every reason why these should not be the objects of an execution operating with the same force against the warrant being so, which is a chose in action. But supposing the land warrant, in the hands of Samuel Barton, could have been seized and sold under execution, and the same in the hands of Margaret, before appropriation by entry thereon (this is supposing the transfer void), could it afterwards? I think not; because by affixing the warrant to land, its property as well as nature is altered. Like the case in 6 Ba. Ab. 580, where a piece of timber which was illegally taken was used in building or repairing; this, although it is known to be the same timber, can not be retaken, the nature of the timber being changed; for by annexing it to the freehold it becomes real property. A case analogous to this in principle is in 3 Mass. Term Rep. 403, Floyd v. Day; 6 Ba. Ab. 686, where an agent compromised the demand of his principal by receiving from the debtor a negotiable note for a greater amount, indorsed to the agent, who paid the difference to the debtor, The principal can not maintain trover for the note, for, although the agent is answerable in assumpsit for the money he ought to have received from the debtor, yet the property of the note is in him. So, in the *Page 136 
present case, Margaret might have been answerable after the appropriation of the warrant, to the amount of the value, as for the conversion; yet the entry became her property, and could not be touched by the creditor by execution. Analogous to the present case, as respects the extinguishment of the warrant by the entry, is the case where a contract of a lower degree is determined and annulled by accepting a contract of a higher degree for the same thing. As a simple contract is annulled by a bond, and this last by a judgment, being a higher security. 1 Powell on Contracts, 423. Similar is the case, also, where a man has rent or services issuing out of land, and he purchases the land; the rent and services are extinguished. The plaintiff comes into court now by virtue of the specific liens, created by his judgment and execution, and as a purchaser; he does not come in as a creditor; for if he did, and a proper case was made out for the decree of this court, it would be to take the account, and he would, as a creditor pari passu with others, receive in proportion. Coining in by virtue of his specific lien, he has the whole or none; and, if he has no lien, he can not be relieved as a creditor eo nomine.
I shall now consider the plaintiff's case as' it has been argued for him. That the execution's being levied on the entry of Margaret; that her father Samuel Barton purchased the warrant with his money, and made this entry for the benefit of his daughter, — it is, in other words, a purchase made by him for her.
If Samuel Barton had been the owner of the warrant, and the entry had been in his own name, this interest in the land, though not a legal interest, but an equitable one, would nevertheless by the Act of 1794, c. 5, sec. 7, have been subject to execution against him. If he had purchased the warrant, and made the entry in the name of another, not his child, as the. whole consideration flowed from and had been advanced by him, in (hat case a trust, equal to the *Page 137 
interest in the former case would have resulted to him. Whether this equitable interest would have been subject to an execution has not yet been decided, that I know of. But the present case is much less strong for the plaintiff; when the father advances the purchase-money, and takes the conveyance in the name of an infant child, no trust results; it is deemed an advancement for the child (Sugden, 419), if the child is not advanced. And an advancement in part does not ever vary the case Ibid. 421. Upon this ground, therefore, it is not perceived how the plaintiff can establish a lien upon this land by virtue of a purchase under an execution. No legal estate was vested in Margaret; an equitable interest was vested in her; but it did not result to the father. How, then, could an execution against him create a specific lien upon it? If this property could be reached by him at all in any manner, being a purchase by Margaret, it would not be by the lien set forth in his bill by virtue of the execution against Samuel Barton as a purchaser under it. For the Statute of 27th of Elizabeth, c. 4. and the other statutes of the 50th of Edward III. and the 3d of Henry VII. against fraudulent conveyances, do not extend to a case like this. In 1 Fonb. 275, in the text, it is laid down thus "And some think that fraudulent conveyances are made so only by the several statutes for that purpose, and therefore if the debtor make a purchase in trustees' names he may declare the trust to whom he pleases; for he might have given him the money to have made the purchase himself, and it is a new pretence to say a man made a purchase fraudulently." 2 Vern. 490; Ib. 67, to the same effect. And Sugden. 424, 425, notices the present case expressly. He says a purchase in the name of a child solely, or jointly with the parent's name, is not, however, within the 27th of Elizabeth; and therefore a subsequent purchaser, althoughbona fide, will not be relieved against it. 3 Cro. 550. *Page 138 
From these authorities the plaintiff, if he were a purchaser, could not have the decree of the Court in his favor upon the present case.
With regard to the other part of the argument, that this purchase, for the benefit of Margaret, by her father, is fraudulent by the Statute of 13 Elizabeth, c. 5, as it seems to me, can not apply upon the present case as above noticed. But if the bill had been brought by the plaintiff as a creditor of Samuel Barton, and the daughter as a purchaser, or her representative praying on account of the present estate, debt, c., of Samuel Barton, and that the entry to Margaret might be declared fraudulent and void as against creditors, being voluntary, and an account might be taken, as in Christ's Hospital v. Budgin and others, 2 Vern. 683; and in Lusk v. Wilkenson, 5 Ves. Jr. 384, and it were a recent application, and so no objection would be on account of the laches of the plaintiff in bringing forth a stale demand, — I would say that the evidence in the cause would not warrant the relief prayed for; the circumstance of being indebted merely at the time of the purchase made for the daughter would not answer the purpose. The above case in Ves. Jr. requires the party to be indebted, at the time, to the extent of insolvency in order to affect the purchase. Sudg. 426 thinks it the better opinion, when the case is clear of actual fraud, that a purchase is not within the operation of the 13 Elizabeth at all. For, says he, as the purchaser may give the money to the object of his bounty to purchase the estate for himself, he may by the same reason direct a conveyance to be made to him.
A decree of dismission was entered.